ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| WILLIAM BURNETT, | ) | |
| Plaintiff,[1] | ) ) ) | |
| v. | ) ) | CV 108-013 |
| RONALD STRENGTH, et al., | ) ) | |
| Defendants. | ) ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at the Charles B. Webster Detention Center ("CBWDC") located in Augusta, Georgia when this action commenced, filed the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Because the above-captioned complaint was filed IFP, it must be screened to protect potential Defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) *(per curiam)*, but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i) & (ii).

---

[1] The Court notes that Plaintiff's current service address appears to be 1136 Newman Road, Harlem, Georgia 30814. (Doc. no. 13, p. 2). The **CLERK** is **DIRECTED** to change the docket accordingly.

Accordingly, the Court reviewed the above-captioned complaint in conformity with the IFP statute. Because of pleading deficiencies, Plaintiff was directed to file an amended complaint. (Doc. no. 12). Plaintiff has submitted an amended complaint, (doc. no. 13), and it is this document that the Court will now screen.

## I. BACKGROUND

*Liberally* construing the above-captioned complaint, the Court finds the following. Plaintiff names the following Defendants: (1) Ronald Strength, Sheriff, Richmond County; (2) Charles A. Toole, Jr., Chief Jailor, Richmond County; (3) William E. Johnson, Assistant Chief Jailor, Richmond County; (4) Chester V. Huffman, Assistant Chief Jailor, Richmond County; and (4) the Richmond County Board of Commissioners ("RCBC"). (Doc. no. 13, pp. 3 & 6). Plaintiff submits that, while he was incarcerated at the Richmond County Jail ("RCJ") and the CBWDC, his Eighth Amendment rights were violated.[2] (See id. at 5).

Plaintiff alleges that, in early December 2007, he was incarcerated at the RCJ. (See id. at 4). Plaintiff contends that, although he complained to an unnamed nurse about headaches and his condition worsened while he was incarcerated at the RCJ, he had not been examined by a physician as of January 10, 2008. (See id.). Plaintiff also complains that, on December 12, 2007, he fell down some stairs at the RCJ and that, although he was examined by an unnamed nurse because of swelling in his hip, he had not received an x-ray at the time this action commenced. (Id.).

Plaintiff further alleges that, on December 15, 2007, he was incarcerated at the CBWDC. (See id. at 4). Plaintiff contends that, while he was incarcerated at the CBWDC,

---

[2]Plaintiff was released from incarceration on March 4, 2008. (Doc. no. 8).

2

there were food shortages and that, on January 15, 2008, he was served two sandwiches, an apple, and a piece of cake for dinner. (Id. at 3). Plaintiff maintains that, despite his and other inmates' complaints to unnamed jail officials about the food, there was no response. (Id.).

Plaintiff also complains that the RCJ and the CBWDC are fire hazards. (Id.). Plaintiff alleges that, because numerous inmates were forced to sleep on the floor, the exits and doorways were blocked. (Id.). Plaintiff contends that he and several inmates sent letters to Defendant Huffman asking for grievances, but there was no response. (Id.).

Finally, Plaintiff alleges that his health was jeopardized because the CBWDC and the RCJ were overcrowded. (Id. at 4). Plaintiff contends that the CBWDC and the RCJ lacked properly-functioning or clean bathroom facilities. (Id.). Plaintiff contends that, although he and other inmates submitted a petition to Defendant Huffman, there was no response. (Id.). As relief, Plaintiff requests, *inter alia*, $50,000.00 and $75,000.00 in compensatory and punitive damages, respectively, court costs, and various forms of injunctive relief. (Id. at 5).

## II. SCREENING OF COMPLAINT

### A. Injunctive Relief Claims

Plaintiff seeks, *inter alia*, various forms of injunctive relief. (Doc. no. 13, p. 5). However, as previously noted, Plaintiff was released from incarceration on March 4, 2008. (Doc. no. 8). Section 1983 claims seeking injunctive relief are rendered moot when a prisoner is released from the facility where the alleged unconstitutional conduct occurred. See Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988); McKinnon v. Talladega County, Ala., 745 F.2d 1360, 1363 (11th Cir. 1984). Thus, any claims for which Plaintiff is seeking injunctive relief are moot because he has been released from the facility where the alleged unconstitutional conduct occurred.

3

B. **Complaint, Petition, and Letter Claims**

To the extent Plaintiff may be claiming that Defendant Huffman, or any other jail official, should be held liable for failing to properly handle his complaints, petitions, or letters in compliance with Richmond County Sheriff's Department ("RCSD") policy, such allegations fail to state claims upon which relief may be granted. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the

4

plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff alleges that he and other inmates complained to unnamed jail officials about the food served at the RCJ, as well as sent letters and a petition to Defendant Huffman concerning overcrowded conditions at the RCJ and the CBWDC, but there was no response. (Doc. no. 13, pp. 3-4). However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Similarly, "§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the *Constitution and laws' of the United States*," and thus, alleged failures to respond to complaints, letters, or petitions in compliance with RCSD policy are not actionable under § 1983. Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) (emphasis added). Therefore, to the extent Plaintiff may be claiming that Defendant Huffman, or any other jail official, should be held liable for failing to properly handle his complaints, petition, or letters in accordance with RCSD policy, such allegations fail to state claims upon which relief may be granted. As this is the only claim against Defendant Huffman, he should be dismissed from this case.

5

C.  **Conditions of Confinement Claims**

Plaintiff's claims concerning the alleged service of inadequate food, overcrowded conditions, and denial of medical treatment at the RCJ and the CBWDC fail to state claims upon which relief may be granted. The Eighth Amendment requires that jail officials provide "humane conditions of confinement," including adequate food, clothing, shelter, and medical care.[3] Farmer v. Brennan, 511 U.S. 825, 832 (1994). To make a valid deliberate indifference claim under the Eighth Amendment concerning his conditions of confinement, a prisoner must allege that a prison official knew about and disregarded an excessive risk to the prisoner's health or safety; officials "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." Id. at 837. To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk.[4] Id. at 835-39.

---

[3]The Due Process Clause of the Fourteenth Amendment functions to provide pretrial detainees with essentially the same level of protection as that afforded convicted prisoners by the Eighth Amendment. See Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996); Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985). Thus, regardless of whether Plaintiff was being held at the RCJ or the CBWDC as a pretrial detainee or a convicted inmate, the same legal standard would apply.

[4]When subjectively weighing whether jail officials are deliberately indifferent, courts look for "obduracy and wantonness, not inadvertence or error in good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (citation omitted). To make a valid deliberate indifference claim under the Eighth Amendment concerning his medical treatment, Plaintiff must show that Defendants acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. See id. at 1543-44. Only when medical care is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be satisfied. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).

Plaintiff's complaints concerning the service of unsatisfactory food at the RCJ fall well short of a claim of constitutional magnitude. In the prison-conditions context, a deprivation does not take on a constitutional dimension unless it "result[s] in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (internal quotation omitted). Although Plaintiff may have been dissatisfied with the food served at the RCJ, he did not have a constitutional entitlement to any particular type of food or meals. See Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986) ("A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required."). Therefore, Plaintiff's claim related to the alleged service of unsatisfactory food at the RCJ should be dismissed.

Plaintiff's allegations concerning the overcrowded conditions at the RCJ and the CBWDC also fail to state claims upon which relief may be granted. First, it should be noted that Plaintiff's claim that overcrowded conditions jeopardized his health and safety is vague and conclusory. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (nothing that vague and conclusory accusations are insufficient to state a civil rights claim). To the extent that Plaintiff is referring to any particular fire or safety code, he neither explains those codes nor states what harm he allegedly suffered as a result of their violations. More importantly, Plaintiff does not allege how the action of any Defendant contributed to this claims. See Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting that plaintiffs must "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury"). Therefore, Plaintiff's claims concerning the overcrowded conditions at the RCJ and the CBWDC should also be dismissed.

Plaintiff's complaints related to his medical treatment at the RCJ and the CBWDC also fail to state claims against any Defendant upon which relief may be granted. In this regard, Plaintiff merely submits that, after complaining about headaches to an unnamed nurse, he was not examined by a physician and that, after being examined by an unnamed nurse because he fell down stairs, he did not receive an x-ray. (Doc. no. 13, pp. 3-4). Despite Plaintiff's apparent disapproval with the medical treatment provided, Plaintiff fails to allege whether any Defendant participated in his medical treatment or even knew about his alleged medical conditions. "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). Furthermore, Plaintiff does not allege that any Defendant knew about and disregarded an excessive risk to his health, intentionally refused to provide him medical treatment, provided him cursory care in light of a severe medical risk, or delayed access to care. Rather, Plaintiff merely expresses his dissatisfaction with the treatment afforded by an unnamed nurse.[5] (See id.). In the absence of an allegation of any such connection between Defendants with the alleged unconstitutional deprivations, Plaintiff fails to state deliberate indifference claims against Defendants upon which relief may be granted based on this allegations concerning his medical treatment. Therefore, Plaintiff's claims concerning his medical treatment at the RCJ and the CBWDC should also be dismissed.

---

[5]Indeed, differences of opinion concerning treatment plans fall well short of establishing deliberate indifference claims. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

### D. Defendants RCBC, Strength, Toole, and Johnson

Although Plaintiff names the RCBC, Ronald Strength, Charles A. Toole, Jr., and William E. Johnson as Defendants, he fails to specifically mention these Defendants or assert any particular allegation of wrongdoing related to these Defendants anywhere in his statement of claims. On that basis alone, Plaintiff's claims against these Defendants could be dismissed. See Crawford-El, 523 U.S. at 598 (noting that plaintiffs must "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury").

Nevertheless, even if Plaintiff had specifically mentioned these Defendants in his statement of claim, he fails to state a claim upon which relief may be granted against these Defendants. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."[6] Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold an official in a supervisory position liable, Plaintiff must demonstrate that either (1) the supervisor personally participated in the alleged constitutional violation, or (2) there is a causal connection between actions of the supervising official and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir.

---

[6]To the extent Plaintiff claims that the RCBC should held liable for the alleged constitutional violations of the other Defendants, or any jail official, the Court notes that the RCBC does not supervise the other Defendants. See Manders v. Lee, 338 F.3d 1304, 1311 (11th Cir. 2003) (*en banc*) ("That counties delegate no power or authority to sheriffs further explains why counties have no authority or control over them and why the sheriff is not a subunit or division of county authority.").

1990)). Here, Plaintiff does not allege that these Defendants actually participated in any of the alleged constitutional violations.

Similarly, Plaintiff fails to allege a "causal connection" between these Defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[7] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

In this case, Plaintiff has not alleged the necessary causal connection to hold these Defendants liable for the alleged constitutional violations of other individuals. Plaintiff has not proffered any facts concerning these Defendants, let alone facts demonstrating that there was a causal connection between their actions and the asserted constitutional violations. Furthermore, Plaintiff has alleged no facts suggesting that these Defendants were responsible for a custom or policy resulting in the alleged constitutional violations or that they knew

---

[7] The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be <u>obvious, flagrant, rampant and of continued duration</u>, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

10

about any widespread abuses at the CBWDC or the RCJ concerning the conditions of confinement or the medical treatment of inmates. Simply put, Plaintiff has failed to state a claim against these Defendants based on their supervisory positions. Therefore, Defendants RCBC, Strength, Toole, and Johnson should also be dismissed.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the above-captioned complaint be **DISMISSED** for failure to state a claim against Defendants upon which relief can be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED on this 21st day of August, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE